Syllabus.

# Staunton.

## K. R. CASKIE AND C. J. GRAVETT v. STATE CORPORATION COMMISSION.

September 23, 1926.

1. BLUE SKY LAW—*Sale of Lands Outside of the State by Bona Fide Owners.*—There can be no question that the definition of speculative securities given in the blue sky law section 3848 (27) of the Code of 1924, by its terms includes deeds, contracts and subscription agreements by which persons may be sold title to lands outside of this State, which are divided or to be divided into town or suburban lots, and that lots located in Alabama cannot be sold in Virginia without a permit from the Virginia State Corporation Commission, unless the owners of such lots are excluded from the operation of the statute by the proviso contained in clause 7 of section 3848 (27) of the Code of 1924, which reads: "Provided that this clause shall not be construed to include the *bona fide* owners of any such lot or unit who may sell same for his own account and not as a part of or in furtherance of any promotion.

2. BLUE SKY LAW—*Sale of Lands Outside of the State by Bona Fide Owners—Case at Bar.*—In the instant case, an appeal from the order of the State Corporation Commission requiring a partnership to reduce, by one-half, the prices at which they were offering for sale in Virginia lots in Alabama, the record showed without contradiction that the partners were the *bona fide* owners of the lots in Alabama; that they were the makers or issuers of the deeds or contracts made in connection with the sale of the lots, and that they were selling them for their own account and in the usual and ordinary course of business. The partnership maintained that the lots were not being sold as a part of or in furtherance of any promotion.

   *Held:* That the sale of the lots in question was not within the purview of the blue sky law.

3. WORDS AND PHRASES—*Promotion—Promoter.*—Generally speaking, a "promoter" is a person who engages in the promotion of a plan or scheme by which it is hoped to insure or add to the success of some business venture. The term "promoter" is not a term of law, but of business, usefully summing up in a single word a number of business operations familiar to the commercial world by which a company is generally brought into existence.

4. Blue Sky Law—*"Promotion"—Section 3848, (27) of the Code of 1924.*—There can be no promotion within the purview of the blue sky law (section 3848 (27) of the Code of 1924), on the part of the *bona fide* owner of real estate who, himself without the intervention of agents, sells the same for his own account without any promise of future development and does not resort to any scheme or device to defraud or to induce prospective purchasers to pay prices far in excess of the price they would probably pay were the land sold in the ordinary course of business.

5. Blue Sky Law—*Sale of Lands Outside of the State by Bona Fide Owners—Case at Bar.*—In the instant case, an appeal from an order of the State Corporation Commission requiring a partnership to reduce, by one-half, the prices at which they were offering for sale in Virginia lots in Alabama, the evidence disclosed no fraud or misrepresentation on the part of the partnership. They were *bona fide* owners of the land in fee simple and there was no encumbrance on the title. They were selling the lots, without the assistance of agents, for their own account "in the usual and ordinary course of business." They made no future undertaking or promise to the purchaser. When a lot was sold and the deed was made and delivered to the purchaser, the transaction was forever ended.

    *Held:* That the Commission should have dismissed the proceeding on the ground that the sale of lots under the circumstances was not within the purview of the blue sky law.

6. Blue Sky Law—*Jurisdiction of the Corporation Commission—Sale of Lands Outside of the State by Bona Fide Owners.*—The Corporation Commission has jurisdiction to hear and determine the question whether the owner of land in another State, which has been divided into town or suburban lots, shall secure from the Commission the permit required by the statute (section 3848 (27) of the Code of 1924) before he can sell the lots in this State. But, when it is made to appear, as in the instant case, that the party is a *bona fide* owner, selling his own lots for his own account and not as a part of or in furtherance of any promotion, the proceeding should be dismissed.

7. Blue Sky Law—*Order of the Corporation Commission—Effect of Failure to Appeal from Order.*—Where the Corporation Commission had jurisdiction of the parties and general jurisdiction of the subject matter, and no appeal was taken from the order of the Commission, the order will be permitted to remain in full force and effect.

Appeal from an order of the State Corporation Commission.

*Reversed.*

The opinion states the case.

*Caldwell & Chaney, Jackson & Henson,* for the appellants.

*John R. Saunders, Attorney General, Lewis H. Machen, Leon M. Bazile, Assistant Attorneys General,* and *William R. Shands,* for the appellees.

WEST, J., delivered the opinion of the court.

This is an appeal from an order of the State Corporation Commission requiring K. R. Caskie and C. J. Gravett, trading as Shoals-Ford Division Company, to reduce, by one-half, the price at which they were offering for sale in Virginia lots in "Shoals-Ford Division," Lauderdale, Alabama, and suspending the authorization previously granted them to sell the lots in Virginia, until they file with the Commission a new price list in accordance with its order.

The agreed statement of facts is as follows: "That K. R. Caskie and C. J. Gravett, trading as Shoals-Ford Division Company, although advised by their counsel such was unnecessary, filed a petition with the State Corporation Commission May 14, 1924, asking for authority to sell in Virginia under provisions of sections 3848 (27) of the Code of Virginia, otherwise known as the blue sky law, lots located in a subdivision known as Shoals-Ford Division," Muscle Shoals District, Florence, Alabama. That the Commission granted the Shoals-Ford Division Company, on May 27, 1924, the right to sell lots of a total selling price not to exceed $20,000 according to price list filed with the Commission.

"That on October 31, 1924, the Commission summoned the Shoals-Ford Division Company to a hearing in Richmond to be held on November 28, 1924,

to show cause, if any, why the Commission should not cancel or suspend, as it might see fit, the authorization granted the Shoals-Ford Division Company on May 27, 1924.

"A hearing was held in Richmond November 28, 1924, and a final order was entered by the Commission on April 10, 1925, ordering K. R. Caskie and C. J. Gravett, trading as Shoals-Ford Division Company, to reduce, by one-half, the prices asked for the lots in 'Shoals-Ford Division,' as shown by the price list filed with the Commission May 17, 1924, and suspending the authorization granted on May 27, 1924, until the provisions of such order were complied with. Very little of the twenty thousand dollars worth of the property had been sold when the order of April 10, 1923, was entered.

"That the Shoals-Ford Division Company filed its answer and brief on January 8, 1925, attached hereto and made a part of this record."

It is further stipulated between counsel representing the appellant and appellee that the foregoing and the following constitute a statement of facts so far as this record is concerned:

"That several years ago K. R. Caskie and C. J. Cravett, trading as the Shoals-Ford Division Company, purchased a tract of land in Alabama and paid the purchase money in full, leaving no encumbrance against the property. That they then subdivided the property, the 'Shoals-Ford Division,' into lots and streets as shown by the plat filed and made a part of this record, and proceeded to sell the lots to whomsoever they chose. That the Shoals-Ford Division Company made no promises as to any future developments or improvements, selling the naked land without any further acts to be performed on their part. That they

proceeded to sell several lots in the State of Virginia, and in the early part of 1924 were notified by the Securities Division of the State Corporation Commission that in its unofficial opinion the sale of such lots came within the purview of the blue sky law. That after some correspondence the Shoals-Ford Division Company being advised by its counsel that compliance with the blue sky law was unnecessary and not believing that they were subject to the blue sky law, filed the petition above referred to and obtained the authorization above referred to. That the Securities Division of the State Corporation Commission sent to Alabama, as an agent of the Commission, Commissioner Berkley D. Adams, who made a report to the effect that from the best information he could obtain the lots in question were priced at double what similar lots were being offered for. That upon that information the Commission annulled the authorization granted and cut the prices for which the said lots could be sold to approximately fifty per cent. of the prices on the lists filed by the petitioner, this act on the part of the Commission being its final order entered on April 10, 1925, above referred to, and from which final order this appeal is taken."

The plaintiffs contend that their acts in selling their own lots did not come within the purview of the Virginia blue sky law; that the Commission erred in taking jurisdiction of the case and should not have fixed the price at which plaintiffs could sell their own lands; and that the order of the Commission complained of violates section 1 of the Virginia Bill of Rights of the Constitution of Virginia and section 1 of the fourteenth Amendment to the Constitution of the United States.

Did the sales by the plaintiffs of their own lots,

under the circumstances disclosed by the record, make them amenable to the provisions of the Virginia blue sky law?

The act, section 3848 (27) of the Code of Virginia, provides that "the term 'securities' as used in this act shall be taken to mean stock certificates, shares, bonds  *  *  contracts or bonds for the sale and conveyance of land or deferred payments on instalment plan  *  *,  or other instruments in the nature thereof by whatsoever name known or called." It further provides that "the term 'speculative securities,' as used in this act, shall be taken to mean and include (1) all securities to promote or induce the sale of which, profit, gain or advantage unusual in the ordinary course of legitimate business is in any way advertised or promised;  *  *  (4) securities made or issued in furtherance or promotion of any enterprise or scheme for the sale of unimproved and undeveloped land on any deferred payment or instalment plan, where the value of such securities materially depends on the future performance of any stipulations or promise to furnish irrigation or transportation facilities, sidewalks, sewers, gas, light, streets, or other value enhancing utility or improvement;  *  *  (7) deeds, contracts, subscription agreements or other papers or contracts, by which persons are or may be sold title to or interests in units or lots of oil or mineral lands, or *in lands outside of this State,* which are  *  * *divided or to be divided into town or suburban lots;* provided that this clause shall not be construed to include the *bona fide* owners of any such lot or unit who may sell same for his own account and not as a part of or in furtherance of any promotion." (Italics ours.)

Section 3848 (44) provides as follows: "This act shall not be construed to prevent the sale of purely

speculative securities, but to give the Commission power to regulate the sale thereof and to require that the promoters of such securities shall honestly apply the proceeds of the sale thereof to the purpose for which such securities are sold."

[1] There can be no question that the definition of speculative securities given in the statute by its terms includes deeds, contracts and subscription agreements by which persons may be sold title to lands outside of this State, which are divided or to be divided into town or suburban lots; and that the lots located in 'Shoals-Ford Division cannot be sold in Virginia without a permit from the Virginia State Corporation Commission, unless the owners of such lots are excluded from the operation of the statute by the proviso contained in clause 7 of section 3848 (27) of the Code, which reads: "Provided that this clause shall not be construed to include the *bona fide* owners of any such lot or unit who may sell same for his own account and not as a part of or in furtherance of any promotion."

[2] The record shows, without contradiction, that Caskie and Gravett are the *bona fide* owners of the lots in the Shoals-Ford Division, that they are the makers or issuers of the deeds or contracts made in connection with the sale of the lots, and that they are selling them for their own account and in the usual and ordinary course of business.

The plaintiffs maintain that the lots are not being sold as a part of or in furtherance of any promotion. The Commission held otherwise, and entered the order complained of.

[3] While the statute defines the word "promoter," it does not give the meaning of the word "promotion." To ascertain the definition of "promotion" we must look to the language of the entire statute and the

meaning of "promoter" as used outside of the statute. Generally speaking, a "promoter" is a person who engages in the promotion of a plan or scheme by which it is hoped to insure or add to the success of some business venture. "The term 'promoter' is not a term of law, but of business, usefully summing up in a single word a number of business operations familiar to the commercial world by which a company is *generally* brought into existence. *Whaley Bridge Calico Printing Co.* v. *Green*, 5 Q. B. Div. 109." Words and Phrases, Vol. 6, p. 5685. (Italics ours.)

[4] There can be no promotion, within the purview of the blue sky law, on the part of the *bona fide* owner of real estate who, himself, without the intervention of agents, sells the same for his own account without any promise of future development, and does not resort to any scheme or device to defraud or to induce prospective purchasers to pay prices far in excess of the price they would probably pay were the land sold in the ordinary course of business. The statute does not deprive such owner of the right to avail himself of any supposed unhanced value of his land on account of its location, nor of the right to sell the same at such prices as the purchasers are willing to pay.

[5] The evidence discloses no fraud or misrepresentation on the part of Caskie and Gravett. They are *bona fide* owners of the land in fee simple and there is no encumbrance on the title. They are selling the lots, without the assistance of agents, for their own account "in the usual and ordinary course of business." They make no future undertaking or promise to the purchaser. When a lot is sold and the deed is made and delivered to the purchaser, the transaction is forever ended.

[6] Beyond doubt the Commission has jurisdiction

to hear and determine the question whether the owner of land in another State, which has been divided into town or suburban lots, shall secure from the Commission the permit required by the statute before he can sell the lots in this State. But, when it is made to appear, as in the instant case, that the party is a *bona fide* owner, selling his own lots for his own account and not as a part of or in furtherance of any promotion, the proceeding should be dismissed on the ground that the sale of the lots under such circumstances is not within the purview of the blue sky law.

For the foregoing reasons the order of the Commission entered on April 10, 1925, will be reversed and set aside.

[7] The Commission having jurisdiction of the parties and general jurisdiction of the subject matter, and no appeal having been taken therefrom, the order of the Commission entered on May 27, 1924, is permitted to remain in full force and effect.

*Reversed.*