FRANK J. RYAN and THE RYAN FLORIDA CORPORATION v. STATE, by W. V. KNOTT, JAMES M. LEE and CARY D. LANDIS, as and constituting THE FLORIDA SECURITIES COMMISSION.

174 So. 438.

EN BANC.

Opinion Filed February 6, 1937.

Petition for Rehearing Denied April 15, 1937.

2

*Zewadski & Pierce,* for Appellant;

*Cary D. Landis,* Attorney General, *H. E. Carter* and *John L. Graham,* Assistant Attorneys General, and *J. Rex Farrior,* State Attorney, for Appellee.

WHITFIELD, J.—The bill of complaint herein, seeking an injunction to remedy alleged violations of Chapters 14899 and 16174, Laws of Florida, as amended by Chapter 17253, Acts of 1935, Sections 6002 (2) *et seq.,* C. G. L. Perm. Supp. Vol. 5, "regulating the sale of securities and to make uniform the law relating thereto," was brought and signed

by the State Attorney for the Thirteenth Judicial Circuit of the State of Florida "in the name and on behalf of the State of Florida against Frank J. Ryan and the Ryan Florida Corporation," Rule 7, Chancery Rules; and the bill of complaint was sworn to by an agent of the State Board who under oath states that he then was "an examiner for the Florida Securities Commission, and that he has read the foregoing bill of complaint, and the allegations therein contained are true." Rule 28, Chancery Rules; 21 C. J. 69; 32 C. J. 336-7.

Remedy by injunction, in the name of or on behalf of the State of Florida, is, authorized by the statute. Sec. 6002 (16) C. G. L. Supp. 1936.

The bill of complaint contains allegations that upon complaint and investigation it has been made to appear to the Florida Securities Commission:

"That the defendant, Frank J. Ryan, and the Ryan Florida Corporation, a corporation organized and existing under the laws of Florida, jointly and separately, are dealing in securities within the State of Florida as defined in said Uniform Sale of Securities Act, in that they, jointly and severally, are offering for sale and selling certain 'Partnership Profit-Sharing Agreements' and Guaranteed Re-Sale Lease Agreements, other securities; that said defendants, jointly and severally, have failed and refused to register with the said Florida Securities Commission, post bond, pay the fee and otherwise comply with the provisions of said Uniform Sale of Securities Act, and each of said defendants fails and refuses so to do."

"That said 'Partnership Profit-Sharing Agreements' and 'Guaranteed Re-Sale Lease Agreements,' which are being and have been sold by these defendants are not securities exempt from any of the provisions of said Uniform Sales

of Securities Act, nor have such securities been registered by notification or qualification with the Florida Securities Commission as required by the Uniform Sale of Securities Act."

"That the defendant, Frank J. Ryan, among many others, made the following sales and engaged in the following transactions in violation of said Uniform Sale of Securities Act:

"(1) On or about August 16, 1935, to C. F. Throm, a man advanced in years, to-wit, about eighty-three years of age, a 'Partnership-Profit Sharing Agreement,' a photostatic copy of which is attached hereto as Exhibit 'B,' which has the words, 'I hereby guarantee no loss to Mr. Throm in any way, Frank J. Ryan.'

"(2) On March 17, 1936, to the same C. F. Throm a 'Guaranteed Re-Sale Lease Agreement' (No. 1079), a photostatic copy of which is attached hereto as Exhibit 'C.'

"(3) On the fifth of October, 1935, to Mrs. Mary E. Duncan, a widow beyond the age of seventy years, a 'Partnership Profit-Sharing Agreement' (No. 1012) a photostatic copy of which is attached hereto marked Exhibit 'D.'

"(4) On April 4, 1936, to Frank Auer and Mrs. Syrena Auer a 'Guaranteed Re-Sale Lease Agreement' (No. 1098) a photostatic copy of which is attached hereto, marked Exhibit 'E.'

"The plaintiff alleges that each of the four preceding transactions refers to a sale of a certain oil and gas lease; that said lease was a part of and incidental to the sale of the security or 'Agreement'; that the 'Agreement' in each instance was the chief thing and consideration by which the defendant Frank J. Ryan made the sale to the purchaser and for which the purchaser paid the money, stock or other valuable consideration."

"The plaintiff alleges that the defendant, Frank J. Ryan, and his associates, operate in and from the offices in Tampa, Florida, of the defendant, the Ryan Florida Corporation, a Florida corporation; that his correspondence to said purchasers is on stationary headed 'Ryan-Florida Corporation, Established 1925, Frank J. Ryan, President'; that the operations and sales of the two defendants are so handled as to confuse the public and to assist each other in the promotion of sales."

The prayer contains the following:

"That the defendants and each of them be restrained by preliminary injunction from engaging in any sales and practices and from doing any act or acts in furtherance thereof or in violation of said Uniform Sale of Securities Act; that on final hearing said injunction be made permanent and include any and all things proper from the record herein for the protection of the plaintiff and the people of Florida."

Defendants filed an answer and included therein a motion to dismiss challenging the sufficiency of the bill to state an equity for the relief prayed.

Testimony was taken before the Chancellor who rendered the following final decree:

"This cause coming on for final hearing on Bill of Complaint, answer of defendant and the motion contained therein to dismiss the said bill, and the evidence taken before the Court, after hearing argument of counsel and considering the briefs submitted, and the Court finding that the transactions or contracts described in the Bill of Complaint and therein complained of are securities within the definition thereof as contained in the Uniform Sale of Securities Act of Florida.

"It is thereupon ORDERED, ADJUDGED and DECREED that the defendants, Ryan Florida Corporation, a corporation, its

officers and agents, and the defendant, Frank J. Ryan, be and each of them are hereby permanently enjoined and restrained from offering for sale or selling the securities known as Guaranteed Re-Sale Lease Agreements and Partnership Profit-sharing Agreements, such as are described in the Bill of Complaint in this cause, or of like or similar nature, unless and until the said defendants and each of them register and qualify with the Florida Securities Commission in accordance with the provisions of said Uniform Sale of Securities Act of Florida."

Defendants appealed.

The statute contains the following:

" 'Sale' or 'Sell' shall include every disposition, or attempt to dispose of a security or interest in a security for value. Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been sold for value. 'Sale' or 'Sell' shall also include a contract to sell, an exchange, an attempt to sell, an option of sale, a solicitation of a sale, a subscription or an offer to sell, directly or by an agent, or a circular letter, advertisement or otherwise; * * *

" 'Security' shall include any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation, or right to subscribe to any of the foregoing, certificates of interest in a profit-sharing agreement, certificate of interest in an oil, gas, petroleum, mineral or mining title or lease, or the right to participate therein, collateral trust certificate, pre-organization certificate, pre-organization subscription, or any transferable share, investment contract, or beneficial interest in title to property, profits or earnings, interest in or under a profit-sharing or participation agreement or scheme, or any other instrument

commonly known as a security; including an interim or temporary bond, debenture, note, certificate, or receipt for a security or for subscription to a security." Sec. 1 (1) Chap. 17253, Laws of Florida, 1935; Sec. 6002 (2) C. G. L. Supp. 1936.

Copies of two of the exhibits are as follows:

"UNITED STATES OF AMERICA
"STATE OF FLORIDA
"No. 1012 $1000.00
"PARTNERSHIP PROFIT-SHARING AGREEMENT

"THIS AGREEMENT, Made and entered into this *fifth* day of *October,* 1935, by and between FRANK J. RYAN, (President of the Ryan Florida Corporation, a Florida Corporation) as an individual, Fiscal Agent, Malone and Pope, Inc., and Southern Petroleum Company, Inc., Capital $100,000.00, Party of the First Part, and_____ Mrs. Mary E. Duncan of Tampa, Florida, to be known as the Party of the Second Part;

"WITNESSETH: WHEREAS, Party of the Second Part has this day purchased from Party of the First Part, a certain Oil and Gas Lease containing 20 acres in Hillsborough County, State of Florida, in the section known as The Wimauma Area, in which section Southern Petroleum Co. Well No. 1 (one) is now being drilled, said Party of the Second Part paying for the lease as follows:

"*One Thousand Dollars* ($1,000.00), *Government Bond,* a total of $1,000.00, being the accepted consideration agreed to by both parties hereto:

"IT IS AGREED and guaranteed by the Party of the First Part to the Party of the Second Part to net the Party of the Second Part a sum of $1,000.00 on the sale of said lease by the Party of the First Part as soon thereafter as mu-

tually agreed after the bringing in of Well No. 1 as a producer by the Southern Petroleum Company;

"It Is Further Agreed that the Party of the First Part is to act as selling agent for said lease for the Party of the Second Part, and that all sums, moneys, or properties reived from the sale of said lease over and above $1,000.00 are to be divided equally between both parties herein mentioned.

"Signed and executed in duplicate this day and year above mentioned.

"Frank J. Ryan
"(Seal)                    "Party of the First Part
"Mary E. Duncan,
"Party of the Second Part."

"United States of America
"State of Florida
"No. 1098                                    $500.00

"Guaranteed Re-Sale Lease Agreement

"This Agreement, Made and entered into this 4th day of April, 1936, by and between Frank J. Ryan (President of the Ryan Florida Corporation, a Florida Corporation) as an individual, Fiscal Agent, Malone and Pope, Inc., and Southern Petroleum Company, Inc., Capital $100,000.00, Party of the First Part, and Frank W. Auer and Mrs. Syrena Auer of Tampa, Florida, to be known as the Party of the Second Part;

"Witnesseth: Whereas, Party of the Second Part has this day purchased from Malone and Pope, Inc., a certain Oil and Gas Lease containing 10 acres in Hillsborough County, State of Florida, in the section known as The Wimauma Area, in which section Southern Petroleum Co.

Well No. 1 (One) is now being drilled, said Party of the Second Part paying for the lease as follows:

"Seventeen Shares of Suwannee Live Stock
Joint Contract Separate Leases

a total of $500.00, being the accepted consideration agreed to by both parties hereto;

"It. Is Agreed and guaranteed by the Party of the First Part to the Party of the Second Part to net the Party of the Second Part a sum of $500.00 on the sale of said lease by the Party of the First Part as soon thereafter as mutually agreed after the bringing in of Well No. 1 as a producer by the Southern Petroleum Company; or any subsequent wells.

"It Is Further Agreed that the Party of the First Part is to act as selling agent for said lease without cost to the Party of the Second Part, and that all sums, moneys, or properties received from the sale of said lease over and above $500.00 are to be divided equally between both parties herein mentioned, it being expressly understood between the parties to this agreement that the Party of the First Part is to receive the sum of 50% of all profits over and above $500.00, said 50% being commission in full for the sale of said lease.

"Signed, sealed, and executed in duplicate the day and year above mentioned.

"Frank J. Ryan (Seal)
Party of the First Part
"Frank W. Auer (Seal)
Party of the Second Part.
"Syrina Auer.

"(Seal)

"Witnesses:
"J. P. Wallace
"K. Osborn."

In the Partnership Profit-Sharing Agreement No. 1012, the defendant, Frank J. Ryan, as an individual, is party of the first part and Mrs. Mary E. Duncan, party of the second part. It is stated in the agreement that the party of the second part has purchased from the party of the first part a certain Oil and Gas Lease, said party of the second part paying for the lease $1,000.00 Government Bond, being the accepted consideration agreed to by both parties. "It is agreed and guaranteed by the party of the first part to the party of the second part to net the party of the second part a sum of $1,000.00 on the sale of said lease by the party of the first part." It is agreed that the party of the first part is to act as selling agent for said lease for the party of the second part "and that all sums, moneys, or properties received from the sale of said lease over and above $1,000.00 are to be divided equally between both parties."

Such transaction constitutes a sale of an interest in a profit-sharing agreement or scheme which is a security within the meaning of the Act above referred to.

The "Guaranteed Re-Sale Lease Agreement," copied above, between Frank J. Ryan, as an individual, fiscal agent, Malone and Pope, Inc., etc., party of the first part, and Frank W. Auer and Mrs. Syrena Auer, to be known as party of the second part, states that the parties of the second part purchased from Malone and Pope, Inc., a stated Oil and Gas Lease, paying therefor a total of $500.00, "being the accepted consideration agreed to by both parties hereto;" with guarantee and agreements similar to those in the "Partnership Profit-Sharing Agreement" also copied above.

The Guaranteed Re-Sale Lease Agreement, like the Partnership Profit-Sharing Agreement is subject to the statute

herein above referred to. See State v. Minge, 119 Fla. 515, 160 So. 670. See Annotation 87 A. L. R. 42.

The evidence indicates that oil and gas leases referred to in the quoted agreements were in fact entered into, and the agreements show the connection between the leases and the agreements.

Section 15, Chapter 14899, Acts of 1931, Section 6002 (16), Compiled General Laws Permanent Supplement, 1936, provides:

"Whenever it shall appear to the Commission, either upon complaint or otherwise, that in the issuance, sale, promotion, negotiation, advertisement, or distribution of any securities within this State, including any security exempted under the provisions of Section 4, and including any transaction exempted under the provisions of Section 5, any person, as defined in this Act:

"(1) Shall have employed or employs, or is about to employ, any device, scheme or artifice to defraud or for obtaining money or property by means of any false pretense, representation or promise;

"(2) or that any such person shall have made, makes or attempts to make in this State fictitious or pretended purchases or sales of securities;

"(3) or shall have engaged in or engages in or is about to engage in any practice or transaction or course of business relating to the purchase or sale of securities

"(a) which is in violation of law

"(b) or which is fraudulent

"(c) or which has operated or which would operate as a fraud upon the purchaser;

any one or all of which devices, schemes, artifices, fictitious or pretended purchases, or sales of securities, practices,

transactings and courses of business are hereby declared to be and are hereinafter referred to as fraudulent practice.

"(4) or that any person is acting as dealer or salesman within this State without being duly registered as such dealer or salesman as provided in this Act;

"The Commission may investigate, and whenever it shall believe from evidence satisfactory to it;

"(a) that any such person has engaged in, is engaged or is about to engage in any of the practices or transactions hereinbefore referred to as and declared to be fraudulent practices;

"(b) or is selling or offering for sale any securities in violation of this Act or is acting as a dealer or salesman without being duly registered as provided in this Act;

"The commission may in addition to any other remedies, bring action in the name and on behalf of the State of Florida against such person and any other person or persons concerned in or in any way participating in or about to participate in such fraudulent practices or acting in violation of this Act, to enjoin such person and such other person or persons from continuing such fraudulent practices or engaging therein or doing any act or acts in furtherance thereof or in violation of this Act. In any such court proceedings the Commission may apply for and on due showing be entitled to have issued the Court's subpoena requiring forthwith the appearance of any defendant and his employees, salesman or agents and the production of documents, books and records as may appear necessary for the hearing of such petition, to testify and give evidence concerning the acts or conduct or things complained of in :such application for injunction. In such action the equity courts shall have jurisdiction of the subject matter and a

judgment may be entered awarding such injunction as may be proper."

The bill of complaint brought by the State Attorney "in the name and on behalf of the State of Florida" alleges that "upon complaint and investigation the following facts have been made to appear to the Florida Securities Commission." Then follows the substance of the bill of complaint. The fifth paragraph of the bill alleges:

·"That the undersigned State's Attorney has been requested by D. Kirk Gunby as Examiner for the Florida Securities Commission to bring this suit; that the. said D. Kirk Gunby was ordered and directed by said Commission to cause this suit to be filed as appears from a copy of said order attached thereto as Exhibit 'A,' and hereby made a part of this bill of. complaint."

The answer avers that:

"These defendants are without knowledge of the allegations of paragraph five of the bill."

This operated as a denial of the alleged authority given by the Commission to bring the suit for injunction. Chap. 14658, Acts of 1931; Sec. 4902 (15) C. G. L. Perm. Supp. 1936, Sec. 34 of the 1931 Chancery Act. The burden of proof was upon the plaintiff.

The order of the Securities Commission, Exhibit "A," referred to in the answer, was not admitted in evidence because of testimony that a part of its contents was incorporated therein after it was signed by the chairman of the Commission. There is evidence that the members of the Commission orally authorized its Examiner to have the suit instituted. But the statute contemplates that the official action authorized shall be duly taken by the "Commission" as an official body in session, and not by the members of the Commission acting severally.

14

The bill of complaint alleges grounds for the equitable remedy sought, but the evidence does not adequately show that the institution of this suit for injunction was duly authorized by the Florida Securities Commission as contemplated by the statute.

The decree is reversed without prejudice and the Circuit Court is allowed to entertain petition to re-open case for further evidence if consistent with pleadings and opinion of this Court.

ELLIS, C. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.