The defendants were indicted for violation of the North Carolina Capital Issues Law, ch. 149, Public Laws 1927. The bill charged them with carrying on the business of dealers in securities without being *Page 622 
registered as such, and with the sale of securities without having had same registered as required by the act. From judgment imposing prison sentence predicated on verdict of guilty, the defendants appealed.
The transactions with respect to which the defendants were indicted involved the sale or assignment of oil and gas leases on certain lands in the State of New Mexico, and the determinative question presented by the appeal is whether these lease assignments are embraced within the definition of "securities" contained in the North Carolina Capital Issues Law.
This statute defines the securities which come within the purview of the act as follows:
"The term `securities' or `security' shall include any note, stock certificate, stock, treasury stock, bond, debenture, evidence of indebtedness, transferable certificate or (of) interest or participation, certificate of interest in a profit-sharing agreement, certificate of interest in oil, gas or mining lease, collateral trust certificate, any transferable share, investment contract, or beneficial interest in or title to property or profits or any other instrument commonly known as security." By chapter 432, Public Laws 1933, this definition was enlarged to embrace other matters not pertinent here.
The statute further provides that whoever shall sell a security defined, without having registered himself and the security in the manner prescribed by the act, shall be guilty of a felony.
The bill of indictment did not specify the security with sale of which the defendants were charged, nor was a bill of particulars requested, but it was conceded that, among the definitions of securities set out in the statute, the one applicable to the transaction here was "certificate of interest in an oil, gas or mining lease."
The proof was that the witness, Mrs. Palmer, had purchased or contracted to purchase from the defendants the assignment to her of an oil and gas lease executed and duly probated by Rolph Gallinger and wife, conveying to her a subdivision of 40 acres (particularly described) in oil and gas lease No. B-7578, made by the State of New Mexico to Rolph Gallinger, dated 4 May, 1938, the land situated in Chaves County, New Mexico. The lease by the State of New Mexico to Gallinger granted 1,004.69 acres and specifically included the 40 acres described in the assignment to the witness, and contained the following habendum clause: "To have and to hold said land, and all the rights and privileges granted hereunder, to and unto the lessee for a primary term of *Page 623 
five years from the date hereof, and as long thereafter as oil and gas in paying quantities, or either of them is produced from said land by the lessee."
There was also another assignment of oil and gas lease purchased by the witness. The second one was executed to her by Harry W. Wright and wife, describing 40 acres of land in Chaves County, New Mexico, and was identical in form with the Gallinger conveyance. Wright's lease from the State of New Mexico contained a grant of 800 acres, including the 40 acres specifically described in the assignment to the witness, with the same habendum clause quoted above. The defendants were attempting to deliver these lease assignments when they were arrested. There was no contention that the paper writings referred to were registered under the act or that they were within any of the exempted classes.
The Supreme Court of New Mexico has several times construed oil leases similar in form to those in evidence here. It was said in Staplin v.Vesely, 41 N.M., 543 (decided in 1937): "An oil lease is not what is ordinarily denominated a lease, it is a sale of an interest in land."Jones-Noland Drilling Co. v. Bixby, 34 N.M., 413. In Terry v. Humphreys,27 N.M., 564, it was held that an oil or gas lease for a period of five years, or as long as oil or gas in paying quantities is produced from the land, conveys real property. In Guffey v. Smith, 237 U.S. 101, where an Illinois oil lease couched in same terms as shown here was construed, it was said: "It is settled by the decisions of the Supreme Court of Illinois that an oil and gas lease, like that of complainants, passes to the lessee, his heirs and assigns, a present vested right — `a freehold interest' — in the premises, and that this interest is taxable as real property." Bruner v. Hicks, 230 Ill. 536. To the same effect is the holding in Roberts v. Carbon Co., 78 F.2d 39, and Commissioner ofInternal Revenue v. Wilson, 76 Fed. (2), 766, with respect to oil leases in Louisiana and Texas. Also Dabney v. Edwards, 53 Pac. (2), 962, decided by the Supreme Court of California in 1935, and Dabney-Johnston Oil Co. v.Walden, 52 Pac. (2), 237. It was said in a recent case by the Court of Appeals of Kentucky: "It is also settled that an oil and gas lease creates an interest in real estate and is governed by the principles of law applicable to the land." Piney Oil Gas Co. v. Allen, 32 S.W. (2), 325.
While the technical nature of the property sold or assigned, whether realty or personalty, is not necessarily determinative of the question whether the security comes within the definitions contained in the statute, it may afford some aid in ascertaining the intent and meaning of the Legislature in the use of the language in which the act is framed. The act is denominated "Capital Issues Law," and ex vi termini refers primarily to certificates of shares of stock in corporations. The subject *Page 624 
matter is the regulation of sales of securities, ordinarily denoting evidences of debt or of property, but the word has a flexible meaning, and the statute extends the definition to comprehend not only stocks and bonds, and certificates of participation in profit-sharing agreements, but also other named forms of investment and interests, including "certificate of interest in an oil, gas or mining lease." That is as far as the language of the statute enlarges the definition of the word used as applicable to the evidence here.
While it is clearly within the police power of the State to constrain the conduct of those who deal in securities, to the end that the public be protected against the imposition of unsubstantial schemes and securities based upon them (Hall v. Gerger-Jones Co., 242 U.S. 539), the penal provisions of the statute making violation thereof a felony must be construed strictly, and the terms of the statute cannot be extended beyond the plain implication of the words used. The penal provisions of the Capital Issues Law were considered by this Court in S. v. Health, 199 N.C. 135,153 S.E. 855. Heath was charged with selling a certificate of interest in a profit-sharing agreement or investment contract, without registration. The proof showed an agreement to participate in the receipts from a realty transfer system sought to be inaugurated in certain counties. In upholding a special verdict of not guilty, Adams, J., speaking for the Court, uses this language: "If a person shall sell any security `embraced and referred to' in the act without having it registered as therein provided, he shall be deemed guilty of a felony. The statute containing this provision is penal. That penal statutes must be construed strictly is a fundamental rule. The forbidden act must come clearly within the prohibition of the statute, for the scope of a penal statute will not ordinarily be enlarged by construction to take in offenses not clearly described; and any doubt on this point will be resolved in favor of the defendant." This rule of construction is supported by what was said byStacy, C. J., speaking for the Court, in S. v. Whitehurst, 212 N.C. 300,193 S.E. 657.
In Caskie v. Corp. Com., 145 Va. 459, 134 S.E. 583, the Supreme Court of Virginia declined to extend the definition of securities under the Virginia statute then in force to include sales of lots in another state by the owners of the land.
The Assistant Attorney-General, who argued this case for the State, cited, in support of his contention that the verdict and judgment should be upheld, the cases of Atwood v. State, 135 Texas Court of Criminal Appeals, 543, 121 S.W. (2), 353; State v. Pullen, 58 R. I., 294, 192 A. 473; and Muse v. State (Texas), but upon examination we think the facts in those cases are distinguishable from those in the instant case. *Page 625 
In Atwood v. State, supra, the appellant there was convicted under the Texas statute, which includes among the definitions of securities required to be registered, "Any instrument representing any interest in or under any oil, gas or mining lease, fee or title." This clause, which was made the principal basis of the decision upholding the conviction (pages 359-360), does not appear in the North Carolina statute. In the recent case of Musev. State (Texas), decided 18 October, 1939, the holding in Atwood v. State,supra, was reaffirmed.
In State v. Pullen, 58 R. I., 294, the Supreme Court of Rhode Island considered a state of facts somewhat similar to that presented here, in an equitable proceeding to restrain respondent from selling, without registration, oil and gas royalties growing out of an oil lease on land in the State of Texas. It was there decided that the royalties constituted an investment by the purchaser in a share of the oil produced by the lessee of land described (1/8 of 1/400th interest), and came within the statute requiring registration of a security defined by Rhode Island General Laws 1923, ch. 273, inter alia, as "certificate of interest in a profit-sharing agreement, certificate of interest in an oil, gas or mining lease."
In Ryan v. State, 128 Fla. 1, the State sought by Civil action to restrain appellant from selling "partnership profit-sharing agreements" relating to oil land in the State of Florida. While the appeal was disposed of on other grounds, it was said the "bill of complaint alleges grounds for the equitable remedy sought."
The decision of the question presented by the appeal in the case at bar may not be made to turn upon the fact appearing in evidence that the oil leases sold by the defendants were of little value, and that the probability of profit therefrom was remote, or that the defendants subsequently, pursuant to agreement in the original contract of sale, refunded to Mrs. Palmer the money she had paid. Fraud is not presently charged in the bill. The transaction was an unsavory one and the conduct of defendants not to be condoned. But that is not the question this Court is called upon to decide. Whether the definition of securities in the statute should be amended to include sales or assignments of oil, gas or mining leases, or interests therein, is a matter for the lawmaking body and not for the Court.
Being under the necessity of construing the penal provisions of the capital sales law strictly, we conclude that the definitions contained in the statute may not be enlarged to include within its requirements the transactions disclosed by the evidence in this case. The defendants' motion for judgment as of nonsuit should have been allowed, and the judgment of the Superior Court must be
Reversed. *Page 626